UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 8:05-cr-190-T-17EAJ

CITY OF VENICE

## PLEA AGREEMENT

### A.    **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Paul I. Perez, United States Attorney for the Middle District of Florida, and the defendant, City of Venice, and the attorney for the defendant, Seth L. Rodner, mutually agree as follows:

### 1.    Counts Pleading To

The defendant shall enter a plea of guilty to Count One, Two, and Three of the Information. Counts One, Two and Three charge the defendant with violations of a National Pollution Discharge Elimination System permit, in violation of 33 U.S.C. § 1319(c)(2)(A).

### 2.    Minimum and Maximum Penalties

Counts One, Two and Three each are punishable by a mandatory minimum  fine of $5,000 per day of violation up to a fine of $50,000 per day of violation, a term of supervised release of not more than three (3) years, and a special assessment of $50 per felony count for offenses committed prior to April 24, 1996,

Defendant's Initials _____                      AF Approval _____

$100 per felony count thereafter; for organizations the amounts are "$200" and "$400" respectively, said special assessment to be due on the date of sentencing. The Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

    3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Counts One, Two and Three are:

> First:    A person;
>
> Second:    Violated a permit condition or limitation of a permit which had been issued under 33 U.S.C. § 1342.;
>
> Third:    That permit condition or limitation implemented a relevant section of the Clean Water Act (here §§ 1311 and 1318);
>
> Fourth:    Did so knowingly.

    4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

    5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

Defendant's Initials _____        2

6.    Application of the Sentencing Guidelines as to Fine

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the

defendant agree to jointly recommend that any fine to be imposed for each of Counts

One, Two, and Three will be determined pursuant to USSG § 8C2.10, and the United

States agrees to recommend that the Court's fine not exceed the $5,000 daily

minimum mandatory fine imposed by 33 U.S.C. § 1319(c)(2)(A).

7.    Agreements Relevant to USSG Chapter 2

The United States and the defendant further agree that, insofar as USSG

Chapter 2 is found to apply in this matter, the following will apply:

a.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no

adverse information is received suggesting such a

recommendation to be unwarranted, the United States will

recommend to the Court that the defendant receive a two-

level downward adjustment for acceptance of responsibility,

pursuant to USSG §3E1.1(a). The defendant understands

that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will

not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant

complies with the provisions of USSG §3E1.1(b), the United

States agrees to file a motion pursuant to USSG §3E1.1(b)

for a downward adjustment of one additional level. The

Defendant's Initials _____                3

defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

b.     Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.     Cooperation - Substantial Assistance Not to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, including its past and present employees. Defendant agrees to select and name a contact person who will be responsible for carrying out the Defendant's obligation to cooperate, and this person shall be given the authority and support necessary:

Defendant's Initials _____                    4

a.    to make prompt, full and complete disclosure of all relevant

information, including production of any and all books, papers,

documents, and other objects in Defendant's possession or control;

b.    to encourage cooperation by Defendant's employees with the

government investigation, insofar as their individual constitutional

rights permits;

c.    to make Defendant's employees/agents available, during work

hours, for interviews or testimony which the United States may

require, insofar as their individual constitutional rights permits;

d.    to advise Defendant's employees that cooperation with the

government will not result in any adverse action with regard to their

employment.

The government and the defendant agree that under this cooperation agreement the

Defendant is not required 1) the Defendant is not required to request of its present or

former officials, employees, or agents that they forego seeking the advice of an

attorney, nor that they act contrary to that advice; 2) the Defendant is not required to

take any action against its officials, employees, or agents for following their attorneys'

advice; 3) the Defendant is not required to waive any privilege or claim of work product

as part of its obligations under this Plea Agreement.

9.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant

authorities the nature and extent of defendant's cooperation and any other mitigating

circumstances indicative of the Defendant's rehabilitative intent by assuming the

Defendant's Initials _____          5

fundamental civic duty of reporting crime.  However, the Defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.     It is understood that should the Defendant knowingly provide incomplete or untruthful information pursuant to this agreement, or should the Defendant falsely implicate or incriminate any person, or should the Defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

      (1)     The Defendant may be prosecuted for obstruction of justice;

      (2)     The United States may prosecute the Defendant for any additional charges known to the government which were not included in the Information, and the Defendant does hereby waive, in open court, prosecution by indictment on such charges, and consents that the United States may proceed by information instead of by indictment with regard to such charges, pursuant to this plea agreement, and the Defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

      (3)     The government may use against the Defendant its own admissions and statements and the information and books, papers, documents, and objects that the Defendant has furnished in the course of the Defendant's cooperation with the government.

      (4)     The Defendant will not be permitted to withdraw the guilty pleas to those counts to which Defendant hereby agrees to plead in the instant case

Defendant's Initials _____      6

but, in that event, Defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the Defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this plea agreement null and void.

10. Municipal Defendant

The undersigned officer or representative of the defendant hereby certifies that he is authorized by the defendant to act on its behalf, to plead guilty to the charges alleged in the Information, and to enter into this plea agreement, and that a resolution so empowering said officer or representative has been duly made and approved by the defendant. Said defendant either has implemented or will, by the time of sentencing, implement an effective program to prevent and detect violations of law, which program shall require the exercise of due diligence, requiring at a minimum that the defendant take the steps set forth in USSG § 8A1.2 comment. (n.3(k)) and to make certain revisions to the operation of the City of Venice Eastside Wastewater Treatment Facility at 3510 East Laurel Road, Venice, Florida, specifically:

   a. To establish a procedure whereby each employee who provides information for insertion in any Discharge Monitoring Report will be required to sign an acknowledgment that all information provided is true, accurate and based upon data obtained through measuring/monitoring devices;

   b. To establish a cross-check procedure whereby at least two persons are responsible for verifying the accuracy and completeness of any

Defendant's Initials _____                7

and all information provided to the Florida Department of Environmental Protection;

c.  To install and maintain flow meters and totalizers to measure flow to each of the outfall locations D002 through D011 as described in the Florida Department of Environmental Protection permit Fl0041441 issued to the City of Venice unless and until such outfalls are functionally disabled or otherwise removed from use, for example by means of a locked cap, rendering inoperable the applicable pumping mechanism, or other similar method mutually agreed by the parties;

d.  To install and maintain a level sensor in the 3 million gallon storage tank at the Eastside Wastewater Treatment Facility;

e.  To install and maintain flow meters and totalizers to measure the total flow to reuse, R001, as described in the Florida Department of Environmental Protection permit Fl0041441 issued to the City of Venice unless and until such outfalls are functionally disabled or otherwise removed from use, for example by means of a locked cap, rendering inoperable the applicable pumping mechanism, or other similar method mutually agreed by the parties;.

f.  To revise its record-keeping procedures to require its employees to record the following information:

Defendant's Initials _____                 8

> (1)   The precise day and hour on which discharges to Curry
>         Creek are begun and ended, and identification of the
>         employees who initiated and ended such discharges;
>
> (2)   Daily recording of the measurements from the flow meters,
>         totalizers and level sensors described in paragraphs c) and
>         d) and e) above.

The defendant further agrees that such a program may be made a special condition of probation, should the Court determine that a sentence of probation is appropriate.

## B.   **Standard Terms and Conditions**

### 1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _____          9

Case 8:05-cr-00190-EAK-EAJ   Document 3   Filed 05/11/05   Page 10 of 21 PageID 22

### 2.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

### 3.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by

Defendant's Initials _____                    10

the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

4.    Appeal of Sentence - Waiver

The government agrees that the defendant may appeal any sentence which exceeds the mandatory minimum fine of $5,000 per day of violation required by 33 U.S.C. § 1319(c)(2)(A). The defendant expressly waives the right to appeal or collaterally challenge any sentence below  the mandatory minimum fine of $5,000 per day of violation required by 33 U.S.C. § 1319(c)(2)(A), including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except on the ground that the sentence violates the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then, the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _____                    11

5.      Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

6.      Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

7.      Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and

Defendant's Initials _____                    12

the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any fact affecting defendant's sentence. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

       8.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

### FACTS

From prior to 1999 through 2002, THE CITY OF VENICE ("VENICE") was a municipality with governmental responsibility for the receipt, treatment and disposal of sanitary waste generated in Venice and parts of Sarasota County. In order to carry out this responsibility, VENICE established a Pollution Control Division under the auspices

Defendant's Initials _____            13

of its Utilities Department (collectively referred to as the "PCD") and VENICE delegated to the PCD its responsibility for the treatment and disposal of sanitary waste.

Operations of the PCD relevant to this Information were conducted at the Eastside Wastewater Treatment Facility ("Eastside WWTF") located at 3510 East Laurel Road, Venice, Florida, through three sub-divisions: a) Maintenance, which was generally responsible for the maintenance and operation of equipment, including flow monitors; b) Operations, which was generally responsible for the treatment of sanitary waste and the testing of treated wastewater; and, c) Reuse, which was generally responsible for conducting, monitoring and measuring the disposal of treated wastewater. The Eastside WWTF was a wastewater treatment plant whose operation fell under the provisions of the Clean Water Act. Venice employed high-level executives, managers and supervisors to oversee the day-to-day operations of the PCD and the Eastside WWTF (hereinafter "the Executive Group").

The Florida Department of Environmental Protection (the "FDEP") was a state agency which received funds from the United States of America and which was delegated authority by the EPA to administer the NPDES permit program, to issue NPDES permits to wastewater treatment plants, and to include in those permits specific conditions and limitations on discharges and reporting requirements. On April 25, 2000, the FDEP issued to VENICE, specifically its Utilities Department, the City of Venice NPDES Permit No. FL0041441-02 (hereinafter referred to as "the VENICE NPDES permit") which allowed VENICE to receive and treat sanitary waste and to dispose of treated wastewater. This permit was valid for five years and implemented, among other parts of the Clean Water Act, 33 U.S.C. §§ 1311 and 1318.

Defendant's Initials _____                    14

In accordance with the VENICE NPDES permit, VENICE could properly dispose of treated municipal wastewater by two methods: a) limited "surface water discharges" which were discharges of treated wastewater to navigable waters of the United States (in such case the treated wastewater being described as "effluent"); and, b) limited "reuse" which was the application of treated wastewater to land for a beneficial purpose, most commonly for irrigation (in such case the treated wastewater being described as "reclaimed water"). Both methods of disposal were required to be done in accordance with law, including environmental laws, regulations and the VENICE NPDES permit.

VENICE was responsible for the operation of the PCD and the Eastside WWTF, including collecting required monitoring information, and submitting required monitoring records to appropriate environmental authorities. The VENICE NPDES permit, in relevant part, authorized limited discharges of effluent into Curry Creek through an aeration cascade, which constituted a point source under the Clean Water Act. At all relevant times Curry Creek was a navigable water of the United States as defined in Title 33 U.S.C. § 1362(7) and ran through Sarasota County, Florida, into Roberts Bay and thence to the Gulf of Mexico. Under the VENICE NPDES permit, the flow of effluent to Curry Creek was limited to 1.5 million gallons a day ("mgd") for each of 2.3 days in July, and each of 2.9 days in August. The VENICE NPDES permit did not permit discharge of effluent to Curry Creek in September . VENICE self-reported that it had carried out un-permitted discharges to Curry Creek in August, September and October, 1999. On June 6, 2001, Venice entered into a settlement which required the payment of a $20,000 civil fine as a result of the 1999 discharges to Curry Creek.

Defendant's Initials _____                    15

The VENICE NPDES permit required VENICE to monitor the amount of effluent discharged to Curry Creek each day, referred to as the "flow," using a Recording Flow Meter and Totalizer ("the Curry Creek Flow Meter"), and to report to the FDEP, on a monthly basis, the volume of the monthly and daily flow of effluent to Curry Creek. The monthly reports submitted to the FDEP are known as Discharge Monitoring Reports, commonly referred to as "DMRs." The monthly and daily discharge to Curry Creek was required to be accurately recorded on the DMRs, using the data from the Curry Creek Flow Meter.

From a date unknown, but prior to July 27, 2001, through at least October 1, 2001, the Curry Creek Flow Meter was inoperable. On at least July 29, 2001, July 30, 2001, and July 31, 2001, VENICE did discharge effluent, a pollutant, to Curry Creek, from a point source, despite the fact that the required Flow Meter was inoperable and the amount of the effluent being discharged could not be recorded or monitored. The Executive Group knew that the Flow Meter was inoperable during the July, 2001 discharge of effluent to Curry Creek described above. The Executive Group intentionally caused the July, 2001 discharge of effluent to Curry Creek, knowing that VENICE was not monitoring the volume of effluent being discharged into Curry Creek as was required by the VENICE NPDES permit.

On or about August 24, 2001, a member of the Executive Group caused Toxicity and Daily Sample Reports to be sent to the Florida Department of Environmental Protection, which in relevant part stated that the volume of flow to Curry Creek during July, 2001, was made up of a flow of .45 million gallons on July 29, 2001, a flow of 1.5 million gallons on July 30, 2001, and a flow of 1.5 million gallons on July 31, 2001,

Defendant's Initials _____ 16

although, in truth and in fact, no measurement of the flow to Curry Creek had been taken because of the inoperable Flow Meter. The DMRS failed to disclose that the Curry Creek Flow Meter was inoperable or that there was no factual basis for the amount of flow reported. On or about December 6, 2001, a member of the Executive Group certified the accuracy of the DMR for the month of July, 2001, which stated that a flow meter had continuously recorded the July, 2001 discharges to Curry Creek, which stated that the measured flow indicated a discharge of 3.45 million gallons, and which incorporated the information contained on the Toxicity and Daily Sample Reports described above, (the July DMR) although, in truth and in fact, no measurement of the flow to Curry Creek had been taken because of the inoperable Flow Meter. The July DMR failed to disclose that the flow meter was inoperable or that there was no factual basis for the amount of flow reported.

On at least August 1, 2001, August 2, 2001, and August 3, 2001, VENICE did discharge effluent, a pollutant, to Curry Creek, from a point source, despite the fact that the required Flow Meter was inoperable and the amount of the effluent being discharged could not be recorded or monitored. The Executive Group knew that the Flow Meter was inoperable during the August, 2001 discharge of effluent to Curry Creek described above. The Executive Group intentionally caused the August, 2001 discharge of effluent to Curry Creek, knowing that VENICE was not monitoring the volume of effluent being discharged into Curry Creek as was required by the VENICE NPDES permit.

On or about September 25, 2001, a member of the Executive Group caused Toxicity and Daily Sample Reports to be sent to the Florida Department of

Defendant's Initials _____        17

Environmental Protection, which in relevant part stated that the volume of flow to Curry Creek during August, 2001 was made up of a flow of 1.5 million gallons on August 1, 2001, a flow of 1.5 million gallons on August 2, 2001, and a flow of 1.35 million gallons on August 3, 2001, although, in truth and in fact, no measurement of the flow to Curry Creek had been taken because of the inoperable Flow Meter. The reports failed to disclose that the flow meter was inoperable or that there was no factual basis for the amount of flow reported. On or about November 27, 2001, a member of the Executive Group certified the accuracy of the DMR for the month of August, 2001, which stated that a flow meter had continuously recorded the August, 2001 discharges to Curry Creek, which stated that the measured flow indicated a discharge of 4.35 million gallons, and which incorporated the information contained on the Toxicity and Daily Sample Reports described above, (the August DMR) although, in truth and in fact, no measurement of the flow to Curry Creek had been taken because of the inoperable Flow Meter. The August DMR failed to disclose that the flow meter was inoperable or that there was no factual basis for the amount of flow reported.

On each day from September 17, 2001, through September 30, 2001, VENICE did discharge effluent, a pollutant, to Curry Creek through a point source, despite the fact that the required Flow Meter was inoperable and the amount of the effluent being discharged could not be recorded or monitored. The Executive Group knew that the Flow Meter was inoperable during the September, 2001 discharge of effluent to Curry Creek described above. The Executive Group intentionally caused the September, 2001 discharge of effluent to Curry Creek, knowing that VENICE was not monitoring the

Defendant's Initials _____                      18

volume of effluent being discharged into Curry Creek as was required by the VENICE NPDES permit.

On or about October 19, 2001, a member of the Executive Group caused Toxicity and Daily Sample Reports to be sent to the Florida Department of Environmental Protection, which in relevant part stated that the volume of flow to Curry Creek during September, 2001, was made up of a flow of 1.5 million gallons on each day beginning September 17, 2001, through September 30, 2001 although, in truth and in fact, no measurement of the flow to Curry Creek had been taken because of the inoperable Flow Meter. The reports failed to disclose that the flow meter was inoperable or that there was no factual basis for the amount of flow reported. On or about November 27, 2001, a member of the Executive Group certified the accuracy of the DMR for the month of September, 2001, which indicated a discharge of 21 million gallons to Curry Creek, and which incorporated the information contained on the Toxicity and Daily Sample Reports described above, (the September DMR) although, in truth and in fact, no measurement of the flow to Curry Creek had been taken because of the inoperable Flow Meter. The September DMR failed to disclose that the flow meter was inoperable or that there was no factual basis for the amount of flow reported.

The VENICE NPDES permit, in relevant part, allowed 330,000 gallons of reclaimed water to be reused for irrigation purposes on an averages basis each day by spraying on a field at a Sarasota County park known as Knight's Trail. The pipe irrigation system at Knight's Trail was designed to limit the volume of treated wastewater which could be discharged. On a date unknown, but prior to August 22, 2002, the pipe irrigation system at Knight's Trail was deliberately altered by opening a

Defendant's Initials _____                    19

pipe, which caused surface water discharge of effluent, as opposed to limited spray of reclaimed water, onto Knight's Trail. A member of the Executive Group knew that a pipe had been opened at Knight's Trail, and intentionally and repeatedly caused treated wastewater to be directed to Knight's Trail, knowing that the result would be an unpermitted surface water discharge of effluent. The VENICE NPDES permit did not allow a surface water discharge of effluent at Knight's Trail.

On August 22 and 23, 2002, the effluent discharged at Knight's Trail flowed into Salt Creek. At all relevant times Salt Creek was a navigable water of the United States as defined in Title 33, U.S.C. § 1362(7) which ran through Sarasota County, into Shakett Creek, thence into Dona Bay and thence to the Gulf of Mexico. A preliminary ecological assessment of the sprayfield at Knight's Trail found significant differences in flora when compared with adjacent wetlands, and concluded that the sprayfield was in an unnatural state due to excessive discharge of effluent. The death of pine trees in the sprayfield, erosion, and flooding all likely disturbed wildlife, causing a shift in their habitat. In addition, the study found adjacent wetlands had been negatively impacted by intrusion of effluent. The defendant admits and agrees with the above-described ecological assessment.

9.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

10.   Certification

The defendant and defendant's counsel certify that this plea agreement
has been read in its entirety by (or has been read to) the defendant and that defendant
fully understands its terms.

DATED this _6th_ day of _____May_____, 2005.

PAUL I. PEREZ
United States Attorney

By: _____
CITY OF VENICE                          DENNIS I. MOORE
Defendant                               Assistant United States Attorney

_____        _____
SETH L. RODNER                          ROBERT A. MOSAKOWSKI
Attorney for Defendant                  Assistant United States Attorney
City Attorney                           Chief, Tampa division
FOWLER WHITE BOGGS
   BANKER P.A.